By the Court, Monell, J.
The real question in controversy in this case is, whether the defendants could retain, out *415 of the portion of through fares belonging to the plaintiffs, the monthly sums agreed to be paid by the plaintiffs, to the defendants, under the contract of March, 1850. All the other questions are of minor importance, as they relate solely to a small diminution of the recovery.
It is conceded by both parties that the contract of March, 1850, is void, as being opposed to public policy. An inspection of the contract, satisfies me it is so. It is a compact between the parties, intended to affect the facilities for public travel,over a route of railroad, which had been, or might be authorized by law. The defendants were lessees of the New Haven and Northampton railroad, then in part constructed. The lessors had covenanted not to extend the road northerly beyond Granby station, (a point a little north of the Connecticut line,) without the consent of the defendants, and had given over to the defendants all the franchises and corporate powers of such lessors, for the purpose of locating or constructing any railroad or extension of any railroad northerly from Granby station. By the agreement with the plaintiffs of March 16, 1850, the defendants covenanted to hold the franchises and . corporate powers conveyed to them by such lease, until the 1st of July, 1869, and during such time, not to' extend such railroad north of Granby station. Such an arrangement was intended to prevent the extension of the New Haven and Northampton railroad, to any .point north of its terminus at Granby ; and to prevent any competition in travel, detrimental to the interests of the plaintiffs’ road; which had a monopoly of the carrying trade from Springfield and points north of Springfield via the Northampton and Springfield road, which such extension might afford. The completion- of the New Haven and Northampton railroad to Northampton, would open a new line for travel southward, and would be a competitor and rival of the road of the plaintiffs. Such competition and rivalry it was not lawful for these parties to prevent, or attempt to prevent ; and any contract to effectuate such a purpose is void. Public policy is opposed to any infringement of the rights of travel, or of apy of the facilities which competition may fur *416 nish; and the law will not uphold any agreement which does, or may injuriously affect such rights or facilities. (Doolin v. Ward, 6 John. 194. Hooker v. Vandewater, 4 Denio, 349. Stanton v. Alten, 5 id. 434. Shrewsbury and Birmingham R. R. Co. v. Lond. and N. W. &c. R. R. Co., 21 Eng. L. & E. Rep. 319. State v. Hart. and N. H. R. R. Co., 29 Conn. R. 538. Hood v. The same, 22 id. 502.)
The contract of March, 1850, being void, none of its stipulations can be enforced by either party. Ex turpi contractu actio non oritur.
But the defense is, ■ that the defendants had the right to retain the monthly sum, agreed to be paid, and apply it as a payment. If it had been so retained and applied with the assent of the plaintiffs, the position of the defendants would be sound. Had the plaintiffs voluntarily paid the sum, no action would lie to recover it back. So the plaintiffs would be concluded, if they assented to the retention and application of the money. Such, however, is not this case. The plaintiffs’ action is not upon the void contract, but upon another and entirely different contract. They sought to recover moneys received by the defendants to the use of the plaintiffs. Such moneys did not come to the hands of the defendants under, by reason, or in pursuance of the illegal agreement;. Under a perfectly legal contract, the defendants sold through tickets, over the connected roads of both parties ; and for the portion of the passage money which the plaintiffs are entitled to receive under such contract, it seems to me, the defendants are clearly liable.
The finding of the referee, that the plaintiffs did not agree, to the retention or application of the monthly sum, is, I think, fully sustained by the evidence. The notices from the plaintiffs to the defendants of September, 1856, and March, 1857, were sufficient to preserve the right of the plaintiffs to object to the allowance. The deduction, therefore, of the monthly sums, being without legal justification, it is no defense to the action of the plaintiffs.
It being conceded that the contract of March, 1850, is *417 void, I have not deemed it necessary to examine the allegation in the complaint, or the evidence relating thereto, that the defendants had failed to perform such contract.
' A further defense is, that the contract of April, 1849, is also void; and the parties being in pari delicto, no action lies upon it by either party. That contract was formed for the mutual benefit of the parties, as well as for the convenience of the traveling public. The object was, to establish through connected railroad lines from New York to Boston. To effect that, it was agreed the parties should make suitable connections at New Haven; that passengers should be ticketed through between New York and stations upon the road of the plaintiffs ; and that each party should receive its local rate of fare. Such an arrangement was calculated to facilitate travel; quicken the transit from New York to Boston ; lessen the expenses, and increase the receipts of the respective companies ; and prevent delays.
Although the contract contains many other provisions, not relating to the establishing of through lines of railway travel, yet I am unable to discover in any of them any thing which contravenes public policy. Besides, I am not prepared to say, that the part of the agreement concerning the through' lines may not be upheld, although the other provisions may be void. The consideration for that part being, as I think, independent of the consideration for the others. (Pepper v. Haight, 20 Barb. 429.)
There were also two other contracts between the defendants and the Northampton and New Haven Railroad Company, dated respectively in January, 1848, and January, 1849 ; and it was contended by the appellants’ counsel, that all the contracts as well those between these parties, as those between the defendants and the Northampton and New Haven Railroad Company, were to be taken as one contract, and that all were void. There is no force in the suggestion. The contract of April, 1849, is independent of all the other contracts. And the several other agreements are as distinct from each other as language, and the clear intent of the parties, could make *418 them. They were executed at different times, and designed to effect different purposes ; and either may and must stand or fall, without resort to the other. I can, therefore, see no difficulty in enforcing the provisions of. the agreement of April, 1849. Nothing in that agreement contravenes public policy; and any vice inherent in either of the other agreements, can in nowise affect the former, nor relieve the parties from its obligations.
So far as the rule adopted by the referee in making the division of the fares, relates to the day line of through travel, there is no disagreement, except as relates to the pro rata division of the increased through fare beyond the rate named in the contract. The difference arises in respect to through fares on the night and Sunday lines.
For a part of the period the through fare was $6. In dividing that sum, the referee has given the plaintiff the proportion which $1.75 cents bears to $5. This I think was right. The agreement is clear. It says, “ When the through fare is five dollars, or more, that portion which is due to that part of the line between Springfield and New York, shall be divided between the parties, in proportion to their respective local fares, to wit, one dollar and seventy-five cents between New Haven and Springfield, and one dollar and fifty cents between New Haven and New York.” It is manifest that the parties did not intend to divide ratably in proportion to the number of miles in their respective roads ; but that they meant the division should be upon the rate which $1.75 and $1.50 bore to the whole amount due to that part of the line between Springfield and New York. They were to receive “in proportion” to their “local fares” not in proportion to the miles of road.
The night and Sunday lines were established and operated several years prior to August, 1856, and up to that time the fares had béen divided between the parties.
It is claimed for the defense, that as respects those lines, the pro rata division as fixed by the contract of April 30,1849, has no application. Without any express agreement, the *419 parties established an evening and Sunday connected through line, and continued to operate it for several years, dividing the passage money in a ratio mutually satisfactory. This arrangement was terminable at' the pleasure of either party. The defendants could discontinue the evening or Sunday train, or both, and end the connection.
There was evidence given that the defendants did seek to alter the ratio of division, and claimed that they were entitled to a larger proportion of the through fares than they had previously received. But the referee has found that the plaintiffs did not assent to such change, but insisted that if such lines were continued to be run, it should be upon the previous and existing basis of division. Under such circumstances, the continuance of these lines by the defendants, was an affirmance of the arrangement then existing, and was binding upon them. The declarations and acts of the parties put a construction upon the agreement, by which they must abide.
The referee committed no error in dividing the through fares on the night and Sunday lines, upon the basis of division which the parties had previously adopted and sanctioned.
The referee has found all the facts necessary to sustain his conclusions of law. He was not bound to find any other. I cannot discern that any of the findings are wholly unsupported by evidence ; and where there is a conflict of evidence, this court will not disturb the conclusions of the referee. (Hoogland v. Wright, 7 Bosw. 394. Ball v. Loomis, 29 N. Y. Rep. 412.)
There were no requests made to the referee to find otherwise than he has found ; and his failure to find certain facts, which the defendants now insist he should have found, is not ground of exception. (Ashley v. Marshall, 29 N. Y. Rep. 494.)
The views which I have above expressed, (and which, possibly, I may have expressed too generally,) cover, it seems to *420 me, all the objections pf the defendants. If they are sound, no error was committed by the referee.
I am for affirming the judgment with costs.
Judgment affirmed.