THE WESTERN UNION TELEGRAPH COMPANY *vs.* THE AMERICAN UNION TELEGRAPH COMPANY.

1. Contracts between railroad and telegraph companies, vesting in the latter the exclusive right to use or occupy the right of way of the former, for the erection of telegraph poles and other purposes in connection with their business of transmitting messages, etc., by telegraph, are void as in general restraint of trade, and tending to create monopolies, thus being against the public policy.

2. The railroad companies themselves are in possession of their rights of way by the exercise of the right of eminent domain, granted to them by the state for certain specified uses, and it was never contemplated that property thus condemned to the public use could be conveyed to another company for its exclusive interests and in antagonism to the public interest.

3. There was no power vested in the governor or superintendent of the Western and Atlantic Railroad, whilst conducted under state control, to convey any right of way along its line to any company by which such exclusive rights as are here claimed would pass. This result could only be accomplished by legislative act.

Constitutional law. Contracts. Eminent domain. Western and Atlantic Railroad. Before Judge SNEAD. Richmond Superior Court. April Term, 1880.

The Western Union Telegraph Co. *vs.* The American Union Telegraph Co.

Reported in the opinion.

W. W. MONTGOMERY, for plaintiff in error.

BARNES & CUMMING; J. L. BROWN, for defendant.

CRAWFORD, Justice.

The American Union Telegraph Company filed its bill in Richmond superior court to enjoin the Western Union Telegraph Company from interfering with it in erecting its lines of telegraph upon the several lines of railroad mentioned in the bill, and also to prevent said Western Union Telegraph Company from setting up certain contracts which it claimed to have with those railroads to the detriment of the American Union Telegraph Company.

Upon the hearing below, the chancellor refused to grant the injunction prayed for, on the ground that the Western Union had done nothing, and had made no threats to do anything, to interfere with the American Union Company in building its lines.

The Western Union Company made answer in the nature of a cross-bill to the bill of the American Union Company, and to its cross-bill annexed copies of the various contracts it claimed to have with the various railroad companies named in the bill, and it claimed that said contracts were valid and could not be interfered with, and gave it exclusive telegraph facilities upon the rights of way of those companies, and it prayed that the American Union Telegraph Company be enjoined from proceeding to erect its lines upon such rights of way.

The chancellor refused to grant such injunction upon the ground that the contracts so set up in such cross-bill and made exhibits thereto are void and of no effect as against the American Union Company in so far as they attempt to set up exclusive rights against it. To this ruling the Western Union Telegraph Company excepted, and upon that exception they are at issue here.

The single question made therefore by this record is: Are the contracts between the Western Union Telegraph Company and the railroad companies in so far as they grant the *exclusive* right to that company of establishing lines of telegraphic communication along their roadways, valid or void? The defendant in error insists that they are void:

1st. Because they contravene the act of congress of July 24th, 1866.

2d. Because in general restraint of trade.

3d. They are *ultra vires*.

4th. The right of eminent domain would be lost to the state if such contracts can be maintained.

Whether the act of congress passed in 1866 can affect these contracts executed anterior to its passage is immaterial to this issue, under the view which we have taken of it.

1. The second ground upon which the defense relies is, that these contracts are in general restraint of trade, and seek to create monopolies, and therefore against the public policy.

It is well known that rapid inter-communication between different points by wire and rail has created a wonderful revolution in commercial operations. Producers, consumers, manufacturers, merchants, buyers, sellers, all are brought in close proximity, and daily intelligence is given of the world's transactions. Trade is encouraged, industrial enterprise stimulated, and business in all its various branches builds itself upon knowledge. In war the rapid communication of intelligence is almost incalculable; in peace, it is scarcely less so. Shall the means, then, by which it is transmitted, be monopolized by a *contract* between two artificial beings, invisible, intangible, and existing only in contemplation of law? When such exclusive rights exist, or such monopolies are established, the same should be done by a legislative grant, and not by an individual contract. Our judgment therefore is, that these contracts are especially made and entered into to cripple

and prevent competition, and that they thereby enable the plaintiff in error to fix its tariff of rates at a maximum, governed alone by the necessities of its patrons. Such contracts are not favored by the law; they are against the public policy, because they tend to create monopolies, and are in general restraint of trade. Code, §2750; 40 *Ga.*, 583; Oregon Navigation Company *vs.* Winsor, 20 Wallace, 66, 68; Western Union Telegraph Company *vs.* Atlantic & Pacific Telegraph Co., 5 Nevada, 103, Western Union Telegraph Company *vs.* Central Union Telegraph Company, U. S. C. C., Western District Missouri.

What we have said on the second ground is sufficient to show that our opinion upon the third is that such contracts are *ultra vires*.

2. The fourth ground is, that if the right to exercise such power is admitted to be in the railroad companies, and can be by contract transferred to this company, then the state's right of eminent domain is gone. This appears to us to be so clear a statement of the inevitable consequences of such a construction that it is unanswerable. The exercise of the power of eminent domain, granted to railroad companies for certain specified uses, for the benefit of the general public, was never for a moment considered to imply the right on their part by contract to convey this property, thus condemned to the public use, to another company for its *exclusive interests*, and in antagonism to the *public interest*. Their right to make a contract with the Western Union Telegraph Company to establish its line of wire upon their right-of way is undoubted; but when they go beyond that, and undertake to prohibit and exclude all other lines therefrom, then they seek to add an unlimited franchise to one which is itself limited, and this they are powerless to do.

The state's right of eminent domain extends over every foot of its territory, and the same is held by its owners in subordination to that fixed and co-existing right,

and may be taken for public uses upon just compensation.

It is to be remembered that this controversy does not arise upon any effort to displace the lines of wire established by the Western Union Telegraph Company, nor in any way to interfere with the free use and enjoyment thereof, but arises upon an interference, as is claimed, with its *exclusive* right to occupy the entire right-of-way of each of these companies. So that the question of compensation cannot arise, unless, indeed, it is to be given for a right supposed to exist under an illegal contract; that is, that no other telegraph company, except by its consent, shall ever use or occupy any part of the right-of-way of these several railroad companies. This being so, the act of 1873 does not impair the obligation of any contract made by the plaintiff in error with these companies, although it does provide the mode by which an unused and unoccupied portion of their roadways may be condemned.

4. It is, however, urged that the contract made with the Western and Atlantic Railroad is to be maintained, because made whilst under state control. We know of no power vested in the governor or superintendent of that road, authorizing them to convey any right-of-way along its line to any company by which such *exclusive* rights as are here claimed could be maintained. To authorize the grant of such *exclusive* rights, either for a term of years or in perpetuity, would, as we have already said, require more than executive consent; it must come by legislative act.

The law of the case, in our opinion, is as ruled by the chancellor, and his judgment is affirmed.

Judgment affirmed.