WESTERN UNION TEL. Co. *v.* BALTIMORE & O. TEL. Co. and others.

*(Circuit Court S. D. New York.   March 28, 1884.)*

RAILROAD IS A POST-ROAD, AND AS SUCH AMENABLE TO ACT OF CONGRESS, JULY 24, 1866.

    A railroad is, under the statutes of the United States, a post-road, and accordingly the act of congress of July 24, 1866, giving to all telegraph companies alike the right to construct, maintain, and operate lines along all post-roads of the United States, is paramount over any agreement made by a railroad company securing to a telegraph company the sole use of its line of road for its wires.

In Equity.

*Wager Swayne* and *Burton N. Harrison,* for Western Union Tel. Co.

*Dorsheimer, Bacon & Steele,* for Baltimore & O. Tel. Co. and Nat. Tel. Co.

*P. B. McLennan,* for N. Y., W. S. & B. Ry.

WALLACE, J. The complainant moves for a preliminary injunction to restrain the two telegraph companies defendants from erecting and operating the telegraph line upon the land of the defendant railway company, and to enjoin the railway company from permitting either of the defendant telegraph companies to use its right of way for such purpose, and from violating any of the provisions of an agreement entered into between the complainants and the Jersey City & Albany Railway Company on the seventh day of January, 1880.

The facts are these: On the seventh day of January, 1880, the complainant entered into a written agreement with the Jersey City & Albany Railway Company, which, among other things, contained the following clause:

"The railway company, so far as it legally may, hereby grants and agrees to assure to the telegraph company an exclusive right of way on and along the line and lands of the railway company, and on any extension or branches thereof, for the construction and use of lines of poles and wires for commercial or public uses or business, with the right to put up from time to time such additional wires, or lines of poles and wires, as the telegraph company may deem expedient; and the said railway further agrees * * * that it

will not furnish for any competing line any facilities or assistance that it may lawfully withhold."

At the time this agreement was entered into, the Jersey City & Albany Railway Company was constructing a line of railroad from a point on or near the Hudson river, in the county of Hudson, in the state of New Jersey, and thence northerly to a point at or near Fort Montgomery, on the Hudson river, those points being the *termini* of its route, as provided in its articles of association. It appears by the affidavits that the complainant constructed a telegraph line of about 26 miles in length, along the right of way of the railroad company, between Richfield Junction, New Jersey, and Haverstraw, New York, which was carried into and connected with the several stations of the railway; which line was operated by the complainant under its contract with the Jersey City & Albany Railway Company. In March, 1880, the North River Railway was incorporated and organized, and in May, 1881, the Jersey City & Albany Railway Company consolidated with this corporation. In February, 1880, the defendant the New York, West Shore & Buffalo Railway Company was incorporated and organized, and in June following consolidated with the North River Railway Company, and by the agreement of consolidation succeeded to and assumed all the obligations of the Jersey City & Albany Railway Company to the complainant. The bill alleges that the defendant railway company is now seeking to disaffirm and violate the obligations of the contract of January 7, 1880, and is allowing and assisting the defendant telegraph companies to construct and operate over its right of way a line of telegraph to be operated in competition with any line which may be constructed by the complainant, and that the defendant telegraph companies are proceeding to construct and erect their competing line upon the lands of the railway company without the consent of the complainant, and without acquiring any right of way by condemnation and compensation to the complainants therefor.

It is claimed on the part of the complainant that along certain portions of the lands of the railway company, owing to the physical characteristics of the route, there is not sufficient room for more telegraph lines than are or may be necessary for the convenient operations of the complainant's business. The proofs do not sustain this contention.

Without considering the question whether the railway of the New York, West Shore & Buffalo Company is an extension of the Jersey City & Albany Railway Company, the case may be disposed of upon other grounds. If it was the purpose of the agreement to enable the complainant to exclude all other telegraph companies from acquiring a right of way for constructing and operating their lines over the lands of the railway company, the agreement was void as against public policy, and in contravention of the act of congress of July 24, 1866. That act authorized any telegraph company then organized, or thereafter to be organized, under the laws of any state of the Union, to

construct, maintain, and operate lines of telegraph over and along any post-road of the United States. The railroad here, and all railroads in the United States, are such post-roads; the act of congress applies to them, and its provisions are operative and supreme as a legitimate regulation of commercial intercourse among the states. This was decided by the supreme court in *Pensacola Tel. Co. v. Western Union Tel. Co.* 96 U. S. 1. It was not held in that case that a telegraph company could acquire a right of way over a railroad without the consent of the owner of the railroad, or even that the act gave to telegraph companies the power to acquire such a right of way by compulsory proceedings, upon due compensation to the owner; and the contrary was plainly intimated. But the act was considered and expounded as intended, and effectual, to deny to any one telegraph company the power to acquire any such easement in the lands of a railroad for telegraphic facilities as would exclude other companies from obtaining like privileges, and as a declaration by congress of a policy in the interests of the public and of the government which was reasonable and lawful. Since that decision it has been adjudged in two cases in the circuit courts of the United States that a railroad company cannot grant to a telegraph company the exclusive right to establish a line over its right of way. *Western Union Tel. Co. v. American Union Tel. Co.* 9 Biss. 72; *Western Union Tel. Co. v. Burlington & S. Ry. Co.* 11 FED. REP. 1. See, also, *Western Union Tel. Co. v. American Union Tel. Co.* 65 Ga. 160. Whether an agreement of this kind would not be void as intended to strangle competition, and therefore as being in restraint of trade and obnoxious to public policy, irrespective of the act of congress, is a question which it is not necessary to discuss; it suffices that such an agreement is void because contrary to the policy declared by congress.

The agreement here is to be interpreted so as, if possible, to give it some efficacy and validity. Its language is carefully chosen so as to permit it to be thus interpreted. The railway company assumes to grant only "so far as it legally may." Were it not for this qualification the grant would be void. The complainant can take nothing by the agreement beyond such an easement as is necessary for its legitimate use in constructing and operating its lines. To this extent it could acquire the exclusive right. It could not acquire the right to dictate to other telegraph companies upon what terms they may be permitted to construct and operate competing lines. Nor could the railway company put it out of its own power to permit any telegraph company to enjoy the privileges given by the act of congress, by a cession of that power to the complainant. This would be as obnoxious to the spirit and meaning of the statute as a grant excluding other telegraph companies from the lands of the railway. It would be doing indirectly what cannot be done directly. It would lodge the power with a favored company to impose such onerous terms upon other companies as to preclude competition.

If it were impracticable for the defendant telegraph companies to construct their lines upon the lands of the railroad without invading the complainant's easement by using its poles or otherwise, they would be obliged to obtain the consent of the complainant, or resort to such proceedings as are authorized by the laws of the state under the power of eminent domain. Such is not the case exhibited by the record, and the railway company consents. As to these defendants, therefore, the motion for an injunction is denied.

The complainant alleges that the railway company has removed some of the old line of poles and wires erected by the complainant between Richfield Junction and Haverstraw, with the intention of preventing complainant from operating its line. This is denied by the railway company. Sufficient appears, however, to indicate that the railroad company is hostile to the complainant and in sympathy with the defendant telegraph companies, and, in view of all the circumstances, it is deemed reasonable that the complainant be protected during the pendency of the suit in its possession of the line it has actually constructed. To this extent an injunction will be granted as against the railway company.

The agreement between the complainant and the predecessor of the present railway company contains various stipulations for the benefit of the complainant, which the complainant insists the railway company proposes to violate, and should be enjoined from violating. One of these stipulations is that the railway company shall furnish office-room, light, and fuel, free of charge, to the complainant whenever the complainant elects to establish an office at a station of the railway company. As to all these stipulations, it is sufficient to say that the complainant has an adequate remedy at law for any breach that may take place. Although equity interferes by injunction to restrain breach of agreement when the case is one in which a decree for a specific performance might be made, as also in some cases to restrain the breach of negative covenants, the ground of the jurisdiction is that compensation in damages will not afford redress to the complaining party. This is not such a case.