This is a motion to strike out bills of complaint brought by the East Jersey Water Company against the city of Newark and others, and involves a contract made by Newark to supply water to the town of Kearny, and another contract to supply water to the town of Nutley.
The complainants set up a contract made between the Newark aqueduct board and the mayor and common council of the city of Newark, the Lehigh Valley Railroad Company and the East Jersey Water Company, on September 24th, 1889, providing that the East Jersey should construct and turn over to the city of Newark a system of water works. The fifteenth clause of the contract reads as follows:
"It is further covenanted and agreed by and between the parties to this contract that the party of the third part — Newark — `in the use of the water to be delivered or purchased under this contract may *Page 233 
supply, not only the inhabitants within the present or any future corporate limits of the city of Newark, but also the inhabitants of the townships of Belleville, South Orange, East Orange and Clinton; but will not supply public or private corporations or persons for use outside of the territory aforesaid. And it is also understood and agreed that from and after the completion of the works hereby contracted for and while the city of Newark shall be supplied thereby, neither the party of the first part nor of the second part' — that is the Lehigh Valley and the East Jersey — `nor the Morris Canal and Banking Company, nor the successors or assigns of said corporation, or either of them, shall or will furnish or supply any water, or sell or assign any water rights to any person or corporation, for use within any part of the territory aforesaid.'"
Nutley and Kearny are outside of the territory which, under the terms of the contract, Newark has a right to supply. One of the reasons for striking out the bill is that this provision in the contract is void because in unreasonable restraint of trade. It is concerned with the use of a necessity of life, to wit, water. The contract restricts Newark from supplying water outside of the city of Newark, with the exception of Belleville, South Orange, East Orange and Clinton absolutely, but it does not require the East Jersey Water Company to furnish water to any other municipality. There is no duty laid upon the water company to furnish water anywhere. Newark is not to supply outside of a limited territory whether the East Jersey is, in fact, supplying outside of the territory, or whether it is in a position to so supply. In other words, a condition might arise in which the territories outside of those specifically mentioned in the contract would be bone dry. It should be noticed that since the making of the contract Newark has supplied water to Bloomfield and Glen Ridge, both of which are outside the territory allotted to Newark by the fifteenth clause of this contract. The supply to Bloomfield was with the express consent of the complainant, which Newark obtained for a valuable consideration. The supply to Glen Ridge was with the consent of the complainant, and was furnished from January 24th, 1918, to March 12th, 1919, to meet an emergency arising during the late war. There was, therefore, an emergency recognized in these pleadings, under which the city of Newark was authorized to go outside of the contract. *Page 234 
The pleadings also show that Newark now has an amount of water in excess of its needs, which, if it cannot dispose of, must go absolutely to waste.
The contention of the complainant is that, no matter how much extra water Newark has, it cannot sell except as specified by contract. In other words, if Newark should give up its present water works, it cannot use them for any purpose whatever. The fact that Newark has already disposed of property which, in its opinion, was not necessary for its water supply system, was not alluded to by counsel on the argument or in the briefs, but it is the fact that property owned by the city of Newark for water purposes was so disposed of.
See Astley v. Board of Commissioners of the City of Newark,119 Atl. Rep. 187, 188.
This property was used as a reservoir by the city from some time in the seventies until 1912, when its use as a reservoir in connection with the water supply, which was then being received from the East Jersey, was abandoned. On December 16th, 1889, the Newark aqueduct board adopted a resolution, under the terms of which certain properties, which had been acquired by the city were set apart and dedicated for use as a public park, subject to the right of the city to use, construct and maintain reservoirs and pumping stations. The resolution, in part, is as follows:
"Resolved, That the land herein described is not required for the purpose for which it is purchased, and that the common council do hereby assume control of said land and prepare and allow the same to be used by the public as a park or place of recreation, subject, however, to the right of the Newark aqueduct board or the city to use, construct and maintain on said land, or any part thereof, reservoirs and pumping stations for supplying the city with water."
When the Essex county park commission was created under chapter 91 of the pamphlet laws of 1895, and, under the authority of that act, the city of Newark transferred this property to the park commission. This act of 1895 was attacked in the courts as unconstitutional, not, however, specifically on this ground. The court of errors and appeals in a *Page 235 
unanimous decision, recorded in Ross v. Freeholders,69 N.J. Law 291, sustained the constitutionality, the last clause reading, "the County Park act of March 5th, 1895, is constitutional."
In 1912 the use of the reservoir was abandoned for water supply purposes, and the city attempted to use the reservoir site for a public swimming pool. The park commission objected andcertioraried the ordinance, and in the case of Astley v.Board of Commissioners, supra, the court of errors and appeals sustained the validity of the control of the park commission over this property. It will therefore be seen that, with the consent of the courts, assets of the city of Newark for water purposes have been diverted, notwithstanding the contract in question.
Originally, any restraint of trade was void, but gradually limited restraint of trade began to be recognized. The theory seems to be that the exception to the old rule is that there must be a public policy requiring the restraint which outweighs the public policy forbidding it.
We, therefore, come to the question as to whether a restraint in the use of a commodity, which is vital to the life and health of the community, can be restrained by any contract, and it must be noted that this contract was made by representatives of the city of Newark, a public municipality, and that the East Jersey is a public utility. The general rule is stated in 13 Corp.Jur., tit. "Contracts," 478 § 422, as follows:
"Where a contract in restraint of trade is injurious to the public interest, it will not be sustained, although it is reasonable as between the parties. This is particularly true of contracts affecting business of quasi-public character, such as that of railroads, telegraph, telephone, gas, electric and other public service corporations."
It should be noted that water is a commodity, the restraint of which would be more injurious to the public than any of those mentioned. This rule has been applied with respect to illuminating gas.
In Gibbs v. Consolidated Gas. Co. of Baltimore,130 U.S. 396; 32 L.Ed. (at p. 979), the supreme court of the United *Page 236 
States, speaking through Chief-Justice Fuller, said: "The supplying of illuminating gas is a business of a public nature to meet a public necessity. It is not a business like that of an ordinary corporation engaged in the manufacture of articles that may be furnished by individual effort. New Orleans Gas Co. v.Louisiana Light and Heat Co., 115 U.S. 650 (29, 516);Louisville Gas Co. v. Citizens Gas Light Co, 115 U.S. 683
(29, 510); Shepard v. Milwaukee Gas Light Co., 6 Wis. 539;Chicago Gas Light and Coke Co. v. Peoples Gas Light and CokeCo., 121 Ill. 530; West. Rep. 63; St. Louis v. St. Louis GasLight Co., 70 Mo. 69. Hence, while it is justly urged that those rules which say that a given contract is against public policy, should not be arbitrarily offended so as to interfere with the freedom of contract (Printing Co. v. Sampson, L.R. 19 Eq.462), yet, in the absence of business of such character that it presumably cannot be restrained to any extent whatever without prejudice to the public interest, courts decline to enforce or sustain contracts imposing such restraint, however partial, because in contravention of public policy. This subject is much considered, and the authorities cited in West VirginiaTransportation Co. v. Ohio River Pipe Line Co., 22 W. Va. 600;Chicago Gas Light and Coke Co. v. Peoples Gas Light Co.,121 Ill. 530; 11 West. Rep. 63; Western Union Telegraph Co. v.American Union Telegraph Co., 65 Ga. 160."
In West Virginia Transportation Co. v. Ohio River Pipe LineCo., 46 Am. Rep. 527 (at p. 535), the court said: "From the principles, which underlie all the cases, the inference must be necessarily drawn, that if there by any sort of business, which from its peculiar character can be restrained to no extent whatever without prejudice to the public interest, then the courts would be compelled to hold void any contract imposing any restraint, however partial, on this peculiar business, provided, of course, it be shown clearly that the peculiar business thus attempted to be restrained is of such a character that any restraint upon it, however partial, must be regarded by the court as prejudicial to the public interest. *Page 237 
"Are there any sorts of business of this peculiar character? It seems to me that there are, and that they have been recognized as possessing this peculiar character both by the statute law and by the decisions of the court."
And, again, on page 538:
"If I am right in the views which I have expressed, it would be contrary to public policy for the owner of a water drift mill to contract with another person, the owner of a mill site in the neighborhood, that he would not erect on it a water drift mill, because the business of grinding corn, like that of railroading, is regulated by the statute law as one in which the public has a direct interest, and the necessary land may be condemned for the erection of such water drift mill."
In Charleston National Gas Co. v. Kanawha National Gas, c.,Co., 6 Am. Eng. Anno. Cas. 154, the court said:
"These two corporations were chartered by the state for public service and benefit. The supply of illuminating gas is a business of a public nature to meet a public necessity. It is not a business like that of an ordinary corporation engaged in the manufacture of articles that may be furnished by individual efforts. Hence, while it is justly urged that those public rules which say that a given contract is against public policy, should not be arbitrarily extended so as to interfere with the freedom of contract, yet in the instance of business of such character that it presumably cannot be restrained to any extent whatever, without prejudice to the public interest, courts decline to enforce or sustain contracts imposing such restraint, however partial, because in contravention of public policy. The subject is much considered, and the authorities cited in West VirginiaTransportation Co. v. Ohio River Pipe Line Co., 22 W. Va. 600;Chicago Gas Light Co., c., v. Peoples Gas Light Co., 121 Ill. 530;13 N.E. Rep. 169; Western Union Telegraph Co. v. AmericanUnion Telegraph Co., 65 Ga. 160." And on page 156:
"A combination of two coal companies to give a monopoly on coal was involved in Arnot v. Pittston, c., Coal Co., 68 N.Y. 558.
The court said: `A combination to effect such a purpose is inimical to the interests of the public, and all contracts *Page 238 
designed to effect such an end are contrary to public policy, and therefore illegal.' `It is no answer to say that competition in the salt trade was not in fact destroyed, or that the price of the commodity was not unreasonably advanced. Courts will not stop to inquire as to the degree of injury inflicted on the public; it is enough to know that the inevitable tendency of such contracts is injurious to the public.'"
East Newark v. New York and New Jersey Water Supply Co.,67 N.J. Eq. 265. "If a municipality has a water of its own, and this supply is more than sufficient for its needs, there is a very good reason for investing it with the power to sell this water to neighboring municipalities. Both are obviously benefited. The statutes referred to (P.L. 1885; Gen. Stat. p.655 § 950; P.L. 1884; Gen. Stat. p 2206 §§ 385, 389) do this * * *."
I am of the opinion, therefore, that this contract, limiting the power of the city of Newark to sell its excess water supply is an illegal restraint of trade.
Attention should also be called to the ninth paragraph of the contract between Newark and the East Jersey Water Company, wherein it is specifically provided that after the works had been delivered and constructed Newark should have the right —
"To terminate that part of this contract which provides for the purchase of water by the party of the third part from the party of the second part by the party of the second part by the million gallons, by exercising the option hereinafter given, and to become the owner absolutely in its own right of the water, water rights, dams, reservoirs and works constructed by the party of the second part, for the purpose of this contract, with all their appurtenances."
And it is further provided that under the exercise of this option and the payment of the consideration there should be transferred to Newark —
"The dams, reservoirs, reservoir sites, conduit or conduits, and all the works of every nature and kind built and constructed by the party of the second part * * * with all their appurtenances, together with water rights aforesaid, sufficient to supply fifty million gallons of said water daily forever." *Page 239 
I think, therefore, that the fact that the water works and water supply was transferred absolutely, under this contract, gives the city of Newark the legal right to do what it pleases with any excess of its water supply. It bought the plant, and, under this paragraph, it also bought the water, because, as is obvious, the plant would be useless without the water. The same absolute title given to the plant, it seems to me, gives absolute title to the water.
It is also contended that there is an adequate remedy at law, and, therefore, the bills should be stricken out.
In the case of Sperry Hutchinson Co. v. Vine Brothers,66 N.J. Eq. 339, a bill was filed to enforce a negative covenant. The covenant provided that the defendants would not use any other coupons, trading stamps or similar device than that of complainant during the life of the contract. The court of errors and appeals, speaking through Mr. Justice Swayze, said (at p.340):
"The question whether it is equitable to enforce specific performance against the defendants involves considerations aside from the question whether there has been a breach of contract by the complainant for which an action would lie. The jurisdiction to decree specific performance is based upon the inability of courts to give adequate relief. Brown v. Brown, 6 Stew. Eq.650, 654; Blake v. Flatley, 17 Stew. Eq. 228; Rothholz v.Schwarts, 1 Dick. Ch. Rep. 477. * * *. In the present case, the injury to the complainant is the loss of a market for its stamps and consequent loss of profit. There can be no difficulty in ascertaining how many of the complainant's green stamps would have been required if their place had not been supplied by their competitors red star stamps, and the complainant's profit thereon must be a matter of calculation. Assuming that the complainant has a legal right, the remedy at law is adequate."
In the present case, if the complainants are injured, a suit at law, it seems to me, could be maintained, which would determine the actual monetary loss, if there be one, to the East Jersey Water Company, by reason of the fact that it is not supplying water to Kearny and Nutley, and Newark is. *Page 240 
In the cases of Bloomfield and Glen Ridge, mentioned above, the East Jersey agreed with the city as to what the city should pay it per gallon, and so, it seems to me, that if the East Jersey be injured, the amount of gallons delivered by Newark to Kearny and Nutley can be ascertained, and the value of the water per gallon can also be ascertained.
I, therefore, find that there is in this case an adequate remedy at law.
It is also contended that the provisions of the fifteenth clause of the contract under discussion have been adjudicated, and, therefore, the matter is res adjudicata. The doctrine ofres adjudicata is that the parties must be the same in both cases. In the cases before me, there is an additional party in each case, to wit, the town of Kearny and the town of Nutley; neither of these municipalities is party to the suit mentioned in the argument. The doctrine of res adjudicata was thoroughly discussed in a case to which counsel have not called my attention, but which, perhaps, is the leading case on that point in this state. I refer to S. Barbero v. Miller, 72 N.J. Eq. 248,
the opinion by Vice-Chancellor Garrison, which was unanimously sustained by the court of errors and appeals in aper curiam decision adopting the vice-chancellor's reasoning.
It is also contended that there is a constitutional point involved, to wit, that any alteration in this contract would constitute an impairment of the contract and would be violating the decision laid down in the Dartmouth College Case as to impairment of the obligation of the contract.
Having decided that the contract in its inception was improper, I cannot see that there is anything in this contention, because, if there was no proper contract, there is nothing to violate.
I am therefore of the opinion, for the reasons above stated, that the motion to dismiss the bills be granted. *Page 241