The bill in this case is filed for the specific performance of a covenant contained in a contract made between the Western Electric Company and the defendant. There is no suggestion in the suit of any claim for the infringement of a patent. This court, of course, is without jurisdiction to try such an issue, and it can only be brought in the federal courts.
This controversy first came before the court on April 13th, 1923, on an application for a rule to show cause why an injunction should not issue against the defendant. The rule was returnable April 30th, 1923, but hearing on said rule was continued until May 21st, 1923, when an injunctive order was made with the consent of solicitor at that time appearing for the defendant corporation.
The covenant, which this suit is brought to specifically enforce, is:
"No apparatus shall be sold or leased by the De Forest companyunder its reserved rights, except upon written agreement by the purchaser or lessee, as the case may be, that neither said apparatus, as a whole, nor any part thereof, shall be used in the commercial transmission or reception of messages for pay, or used by others than the original purchaser or lessee, or used for any purposes other than radio communication."
The preliminary injunction restrained violation of this covenant.
In December, 1923, through other solicitors, the defendant corporation made application for a modification of this injunctive order. This was denied, among other reasons, because the day for the opening of the final hearing was near at hand.
At the final hearing considerable testimony was taken and a large number of exhibits came before the court. The facts were fully presented and elaborate arguments, orally and on briefs, followed.
The De Forest company, in 1917, granted to the Western Electric Company patent rights having to do with radio operation; the Western Electric Company, in 1917, assigned these rights to the American Telephone and Telegraph Company; *Page 39 
in 1920 the American Telephone and Telegraph Company granted licenses to the General Electric Company "non-exclusive," and upon the same date the General Electric Company extended to the Radio Corporation of America, the complainant, certain rights under the patents; the De Forest company, in making the contract of March 16th, 1917, with the Western Electric Company, reserved certain rights to manufacture and sell radio apparatus for amateur use; it agreed that no apparatus should be sold or leased by it under such reserved rights except upon written agreement by the purchaser or lessee, as the case might be, that neither said apparatus as a whole, nor any part thereof, should be used in the commercial transmission or reception of messages for pay, or used by others than the original purchaser or lessee, or used for any purposes other than radio communication; the American Telephone and Telegraph Company, for whose benefit the contract was made between the De Forest company and the Western Electric Company, and to whom the contract was assigned as was contemplated when it was made, was interested in retaining for itself the entire field of transmitting messages for pay by wire and in securing to itself, as far as it could, the field of transmitting wireless messages for pay; on January 18th, 1923, an instrument was made between the American Telephone and Telegraph Company and the Radio Corporation, which purports to assign to the Radio Corporation the rights of the telephone company in the restrictive covenant of the De Forest company contained in the agreement of March 16th, 1917, between the De Forest company and the Western Electric Company, together with all right of action and to damages or other legal or equitable relief which had accrued to the telephone company for or on account of any breaches of the covenant with respect to the patents mentioned in the instrument; this so-called assignment reserved to the telephone company "the right hereafter to avail itself of said covenant and to bring suit for violation thereof with respect to said letters patent in all cases where the telephone company * * * shall or may be specifically damaged or *Page 40 
harmed by violation of said covenant with respect to the said patent; provided, that if the aforesaid reservation and exception cannot legally be made, then this agreement shall be wholly void and of no effect;" both the Radio Corporation, the complainant, and the De Forest company, the defendant, are engaged in the amateur field.
The suit is brought by the Radio Corporation to compel the De Forest company to obtain a written agreement from every purchaser or lessee that neither the apparatus as a whole, nor any part thereof, shall be used in the commercial transmission or reception of messages for pay, or used by others than the original purchaser or lessee, or used for any other purpose than radio communication.
The effect of the relief prayed for would be to compel the De Forest company to submit to a sales method, seriously crippling it in disposing of apparatus for the use for which it is entitled to dispose of apparatus under its reserved rights under the agreement of March 16th, 1917. The Radio Corporation is engaged in disposing of apparatus for use in the amateur field, and, if it can compel the De Forest company to submit to this method of sale, it, not being required to secure similar agreements from its customers, will be benefited by a decrease in competition. Both the Radio Corporation and the De Forest company have equal rights in disposing of the apparatus for amateur use. It is not claimed that any of the apparatus sold by the De Forest company is being used for the transmission of messages for pay, or for any purpose other than amateur or experimental, and it would be no concern of the Radio Corporation if, as a matter of fact, the apparatus sold by the De Forest company were used for the transmission of messages for pay or for other than amateur or experimental use, for the Radio Corporation is not in that field. The right of the Radio Corporation to the protection of the covenant is rested upon the fact that the covenant goes with the grant of the licenses, and that to the extent that it has secured licenses or rights under the agreement of March 16th, 1917, it is entitled to the protection of the covenant therein contained, and also upon the assignment *Page 41 
made on January 18th, 1923, by the American Telephone and Telegraph Company to the Radio Corporation. I do not think that it acquired any rights under the assignment of January 18th, 1923, which it did not have before. Whatever may be the effect of this assignment at law, a court of equity will not enforce a restrictive covenant assigned unless the effect of the enforcement of the restrictive covenant will be to protect property held by the complainant at the time of the suit. If the Radio Corporation has no property to be protected it cannot set a court of equity in motion, because of the assignment of the equitable cause of action referred to in the agreement of January 18th, 1923.
For the purposes of this case, however, I think it may be assumed that by virtue of the various instruments between the Western Electric Company, the American Telephone and Telegraph Company, the General Electric Company and the Radio Corporation, the Radio Corporation became vested with the right to enforce this covenant to the extent that it is necessary or appropriate that it should be enforced to protect the property which the Radio Corporation obtained by virtue of these various assignments, which I shall assume to be the right to dispose of apparatus for amateur use.
I am satisfied that, assuming all of the legal questions raised with respect to the rights of the complainant in its favor, the injunction prayed for should be denied.
The clear purpose of the provision and the agreement of March 16th, 1917, requiring the De Forest company to obtain from purchasers of its apparatus an agreement that the apparatus should not be used in the transmission or reception of messages for pay, or by others than the original purchasers, or for purposes other than radio communication, was to protect the exclusive right of the American Telephone and Telegraph Company in the field of transmission and reception of messages either by wire or radio for pay. The complainant, the Radio Corporation, is not using apparatus or selling apparatus for use in this field, and it is not entitled to enforce the covenant for the purpose of protecting the "pay" field. While the provision of the covenant requiring the De Forest *Page 42 
company to secure agreements from its customers, c., are restrictions upon the reserve rights of the De Forest company, nevertheless, in construing the covenant, the whole instrument must be taken into consideration as well as the circumstances surrounding the transaction, and, when that is done, it is quite apparent that the restrictive covenant was inserted for the purpose of protecting the "pay" field. Complainant is now seeking to have this restrictive covenant enforced to reduce competition in the "amateur" field, a purpose never contemplated. To say the best for the complainant, it is not clear that it was ever contemplated that this restrictive covenant should be used solely for the purpose of so hampering the De Forest company in the sale of apparatus for the very purpose for which it is permitted to sell, and without a charge that a single apparatus sold by it has been diverted from the purpose for which it was sold, so as to result in a benefit to the Radio Corporation by the elimination of competition. It is fundamental that equity will never enforce these restrictive covenants unless the right of the complainant is clear.
The negotiations between the De Forest company, the Marconi company and the Radio Corporation the patent attorney of the De Forest company and Mr. Folk, the general patent attorney of the telephone company with respect to the conduct of the business in 1919, were sufficient to lead the De Forest company to believe that the telephone company, and those interested in the enforcement of the covenant, placed a practical construction upon the covenant, to the effect that its purpose was to protect the "pay" field, and the conduct of the parties and the statements made at the time were sufficient to lead the De Forest company to believe that so long as it conducted its business in such a way as that the "pay" field was protected, there would be no insistence upon the performance by it of the strict letter of the covenant of March 16th, 1917. It relied upon this construction of the covenant and upon this understanding of the attitude of the parties, and upon the faith of that reliance it built up a sales organization at considerable cost and *Page 43 
entered into contracts with many distributors which it has been obliged to cancel by reason of the preliminary injunction heretofore granted herein, and it is now being sued upon such contracts for considerable sums of money for damages; it expended a considerable sum of money in increasing its plant equipment. It is quite apparent that the De Forest company would not have so acted had it not assumed that it could continue to sell its apparatus for amateur use through the usual trade channels, and I think that it had the right to assume, from the conduct of the telephone company and its representatives and the others interested in the covenant, that it might continue so to do. To compel the De Forest company to obey the strict letter of the covenant would, in effect, prevent it from doing business at a profit. It would make the investment of the De Forest company worthless.
And to go back to the first proposition, the covenant will have to be used for a purpose not contemplated by it. It will have to be used to reduce competition in the "amateur" field, whereas the purpose was to prevent competition in the "pay" field. InDriver v. Smith, 89 N.J. Eq. 339, are gathered together all the cases which have been decided in this state up to that time upon the question of the discretion of the court of chancery in the enforcement of negative covenants, and in that case injunctive relief was denied upon the ground that the award of an injunction in such a case is a matter of discretion, and that the decree asked for by the complainant would do more injustice than justice.
Under all the circumstances of this case, I think that if there is any legal right in the complainant it should be left to its remedy at law. If it has a legal right, and there has been loss occasioned to it by reason of the invasion of that right, then it would seem that it is no more difficult to fix damages than it was in the case of Sperry Hutchinson v. Vine Bros., 66 N.J. Eq. 339.
In a case just decided in this court (East Jersey Water Co.
v. Newark, 96 N.J. Eq. 231; 2 N.J. Adv. R. 1293), it was held that, under the facts in the case, the complainant *Page 44 
should be left to its remedy at law. The bill was filed by the East Jersey Water Company to compel the city of Newark to comply with the conditions of a covenant contained in a contract between the East Jersey Water Company and Newark, under which Newark acquired its water works, which covenant provided that Newark would not furnish water to public or private corporations outside of certain territory. In violation of the covenant Newark proceeded to make contracts for the furnishing of water outside of the territory referred to, and the bill was filed by the East Jersey Water Company to enforce specific performance of the negative covenant. The injury, of course, to the East Jersey Water Company was the loss of customers. The court held, upon the doctrine of Sperry Hutchinson v. Vine Bros., supra, that complainant should be left to its remedy at law, if it had any remedy.
I will advise a decree dismissing the bill.